# Richmond

## THE FEDERAL LAND BANK OF BALTIMORE V. HARRY L. McCANN, SUBSTITUTED TRUSTEE, ET AL.

October 9, 1939.

Record No. 2116.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

*Peyton G. Jefferson* and *William Beasley,* for the appellant.

*Harrison & Harrison* and *Harry R. Kern,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On February 10, 1932, Harry M. Sartelle and Bessie O. Sartelle, his wife, executed a general deed of assignment

by which they conveyed to Warren Rice, trustee, all of their assets both real and personal for the benefit of all of their lien and general creditors. Among the properties included in the deed were two tracts of land on which The Federal Land Bank of Baltimore (hereinafter called the Bank) held first lien deeds of trust. One tract of 191.5 acres lay in Clarke county and on this there was an unpaid balance of $4,640.43, with interest from January 1, 1932, due the Bank. The other tract of 368 acres lay in Frederick county and on this there was an unpaid balance of $3,903.36, with interest from December 29, 1931, due the Bank.

Shortly after the recordation of the deed of assignment Warren Rice, trustee, filed a bill of complaint in the court below praying for its direction and guidance in the administration of the trust. Harry M. Sartelle, Bessie O. Sartelle, the Bank, and all other lien and general creditors were made parties defendant to the bill.

In due time the Bank filed an answer alleging, among other things, that it was the holder of the first lien debts on the two tracts of land, that these were not due, and that it objected to the sale by the court of the lands covered by its deeds of trust free of such liens except on the following conditions:

"In order, however, that the Court may be able to carry out the trusts imposed on the Complainant by said deed of trust from H. M. Sartelle and wife, dated February 10, 1932, Respondent is ready and willing for all of said lands on which Respondent has liens as above recited to be sold free and acquit of said liens, provided, however, that out of the sales of said lands and out of the sales of all the other assets of said H. M. Sartelle and B. O. Sartelle conveyed to said trustee by said deed of trust of February 10, 1932, all the several balances found to be unpaid to Respondent under said two mortgages, said trust deed to Whitehead and Beasley, Trustees, and said contract of sale, with all accrued interest be paid Respondent, it being understood and agreed that unless all of said several balances with accrued interest be paid to Respondent, this offer is to be of no

effect and Respondent's said liens are to remain in *statu quo* as first liens on the several lands secured to it as above set out."

After the execution of the usual decree of reference, ascertaining and fixing the liens on the property, and the confirmation thereof, a decree was entered on June 4, 1932, directing Warren Rice and Luther Pannett, as trustees*, to sell certain of the properties mentioned in the deed of assignment, including the two tracts covered by the Bank's first lien deeds of trust. While this decree did not expressly state that said lands were to be sold free and clear of all liens, it is admitted by all the parties that it was so intended, construed and acted upon.

Under this decree, on May 6, 1933, the trustees sold the Frederick county tract of 368 acres at public auction to one Clowser for $3,000. Although the amount bid for the property was $903.36 less than the unpaid principal of the Bank's debt, this sale was confirmed by a decree entered December 30, 1933. Admittedly the Bank had knowledge of this sale and confirmation.

In the meantime the Clarke county tract of 191.5 acres had been offered for sale free of liens and bid in by the Bank at $2,250. This bid the court declined to accept and ordered a resale of the property. It was again bid in by the Bank for the same amount. After this last sale the trustees filed a report in which they stated that the Bank had made a private offer of $4,750 for the property. This report was confirmed and a decree was entered on August 4, 1934, directing the trustees to convey the Clarke county property to the Bank at this figure.

However, on January 5, 1935, the Bank filed a petition in the cause alleging that the trustees had been in error in reporting that it had offered to purchase the property in its own name; that the decree confirming such sale had been entered without its knowledge or consent; and that the

---

*Subsequently Luther Pannett died and J. W. Baker was appointed in his place. Thereafter Rice was removed as trustee, Baker resigned, and Harry L. McCann was substituted as sole trustee in their stead.

property should have been conveyed to one Burleson, instead of to the Bank, at the same price. It prayed that the decree confirming the sale of the property to the Bank be annulled and that the trustee be authorized and directed to convey it to Burleson at the sum of $4,750, $4,350 of which was to be evidenced by a note payable direct to the Bank, and $400 of which was to be paid in cash and was to be consumed in costs and expenses of sale. On the same day a decree was entered, in accordance with the prayer of the Bank's petition, annulling the sale to it and directing the trustees to convey the property to Burleson for the price and upon the terms stated. This resulted in leaving an unpaid balance of $847.50 due on the principal of the Bank's deed of trust indebtedness on this property.

In the meantime various other portions of the real and personal property of Sartelle and wife had been sold by the trustees under the foregoing and other decrees.

The cause was then recommitted to the commissioner for a restatement and resettlement of the accounts of the trustees and for a report on a scheme of distribution to the creditors.

Pursuant to this direction the commissioner filed a report which disclosed grave irregularities on the part of Rice, trustee, in the handling of certain of the funds derived by him from the sale of the various properties. The report also recommended a scheme of distribution, to which the Bank excepted on the ground that it failed to provide for the payment to it of the balance due on the two deed of trust indebtednesses as prior and preferred claims over and above those of the general creditors. The Bank's exceptions also alleged that the commissioner had taken the account on matters affecting its rights without notice to it and without having given it an opportunity of being heard thereon.

Consequently a decree was entered recommitting the cause to the commissioner to report on the Bank's claim to priority of payment and on other pertinent matters.

After considerable testimony had been taken the commissioner filed a report in which he adhered to his former

holding that the Bank was not entitled to priority of payment for the balance of its deed of trust indebtednesses out of the general fund derived from the assets of Sartelle and wife. From a decree overruling its exceptions to this report the Bank has appealed.

The first contention of the Bank is that the deed of assignment expressly provides for priority of payment of its deficiency claim. The deed provides that the trustee shall convert the real and personal properties into cash as soon as possible, "And upon the conversion pay all taxes and all claims having priority by reason of any valid lien securing the same and the residue of the fund coming into the hands of said trustee he shall distribute the same *pro rata* to and among the creditors above named with all diligence." The argument seems to be that under this language all lien debts should be paid in full before the general creditors receive anything.

There is no merit in this contention. At the time of the execution of the deed of assignment the Bank had no "valid lien" securing its indebtednesses on any property of Sartelle and wife other than the two tracts of land covered by its particular deeds of trust. The priority of its lien was limited to these particular pieces of property. As to the other property of Sartelle and wife it was merely a general creditor.

It is clear, we think, that the trustee was required out of the proceeds derived from the sale of a particular piece of property first to discharge any valid lien *thereon* and then to apply the residue *pro rata* among the general creditors.

Moreover, if the language under consideration were susceptible of the construction contended for by the Bank, it would have resulted in a preference to it and to the other lien creditors expressly prohibited by statute. Michie's Code 1936, section 5278b, Acts 1924, ch. 434, p. 657.

The next contention of the Bank is that in its answer it offered to consent to a sale of the properties covered by its two deeds of trust, free of liens, upon the condition that out

of the sales of said lands and out of the sales of all the other assets covered by the deed of assignment, the debt due it would be paid in full in preference to the claims of all other creditors, and that when the properties were sold by a decree of court free of such liens this amounted to an acceptance of the conditions which the court could not later disregard.

There is nothing in the record to indicate that the court expressly accepted the Bank's proposition, nor does the Bank so contend. Its argument is that in selling the properties free of liens without expressly rejecting the proposition, the court has "whether wittingly or otherwise," accepted it.

In its written opinion the court states that at the time of the entry of the decree for the sale of the lands on June 4, 1932, the Bank's proposition was discussed and rejected, and that the decree was endorsed by Beasley, counsel for the Bank, who "knew that it carried into effect the court's rejection of the position he had contended for."

While Beasley denied that he understood that the Bank's proposition had been rejected, the court's recollection of the matter is substantiated by that of other counsel in the case.

It is difficult to understand how the court could have accepted the Bank's proposition. The Bank had liens on only two pieces of property owned by Sartelle. It had no lien on the other property of Sartelle or that of his wife. Therefore, an acceptance of the Bank's proposition would have given it a prior lien on property on which it had no claim, to the detriment of the rights of numerous general creditors. A proposition so manifestly unfair could not have been sustained under any equitable principles with which we are familiar.

The record contains abundant proof of the fact that counsel for the Bank, as well as its officials, knew that the properties covered by its deeds of trust were being sold free of liens and without objection on their part. The Bank also knew that in each instance the property brought less than its lien thereon. These sales have been confirmed by proper decrees of court, which have become final, the rights of third

parties have intervened, and admittedly the *status quo* can not be restored.

If the Bank had intended to insist upon the claim that a sale of these properties free of liens amounted to an acceptance of its extraordinary proposition to the court, it should have seen that its claim was protected by an appropriate provision in the decree. In the absence of any such provision, and in view of the court's definite and positive finding on the subject, we must necessarily conclude that the conditions which the Bank sought to impose upon the court by the terms of its answer were not accepted.

It may be said in passing that there is no proof in the record nor is there any claim by the Bank that its rights have been prejudiced by a sale of these properties. On the contrary, as the trial court points out in its written opinion, they sold for all they were worth, so that the Bank obtained full value for its security.

The Bank's next contention is that the decree of January 5, 1935, confirming the sale of the Clarke county property to Burleson, expressly provides for a preferential payment of the deficiency in its deed of trust indebtedness on this land. The language relied on in the decree is as follows: "The unpaid balance on said mortgage debt, after crediting thereon the aggregate of said two last mentioned sums and said $4,350 will be taken care of out of the funds coming into the hands of said Warren Rice, trustee, under said deed of assignment from Harry M. Sartelle and wife from the sale of their real and personal property."

We do not think that this language, fairly interpreted in the light of the previous proceedings in the cause, entitles the Bank to such priority of payment. It will be recalled that when the lands were decreed to be sold the court had rejected the Bank's claim to priority of payment for the deficiency due on the deed of trust indebtedness on this and the other property covered by its liens. If the court had intended to change its ruling in that respect (and no reason is advanced as to why it should have done so) certainly ap-

propriate and accurate language would have been used for this purpose.

Moreover, the record shows that this decree was prepared by counsel for the Bank. We prefer to believe that he incorporated in the decree language which conformed to the court's prior ruling rather than that which he knew ran directly counter thereto.

Hence, we conclude that the language used means that the Bank is entitled to file a claim as a general creditor, and share *pro rata* with them, as to any deficiency due on its deed of trust indebtedness on this property.

The view we have taken of this matter makes it unnecessary that we review the action of the lower court in vacating and annulling, on its own motion, that portion of the decree just discussed. The trial court's opinion discloses that this was done out of an abundance of precaution when it became apparent that the Bank intended to rely on such language in support of a claim to a preferential payment of the balance due it. But the trial court likewise points out that the language was quite susceptible of the interpretation which we have placed upon it.

█ The opinion of the trial court correctly held that the Bank was entitled to prove its deficiency claim against the assets of Harry M. Sartelle alone, and not against those of Bessie O. Sartelle, who was not personally liable for this debt. While the deed of assignment conveyed all of the property of both parties to secure the indebtedness of both, it was provided in the decree of June 4, 1932, "that the assumption by the said Bessie O. Sartelle in the said deed of assignment of the debts of H. M. Sartelle upon which she is not legally bound is voluntary and fraudulent and is therefore set aside as null and void; * * *." This decree was endorsed by counsel for the Federal Land Bank, who took no exception thereto.

In so far as it held that Bessie O. Sartelle was not liable for the debts of Harry M. Sartelle, under said deed of assignment, the decree was final, and became binding on the

parties after the expiration of the statutory period within which an appeal might have been taken.

The Bank next complains of the action of the lower court in holding that interest has ceased to run on the deficiency due it on the deed of trust indebtedness on the Frederick county property because of a valid tender which had been made to the Bank by one of the trustees.

On May 6, 1933, Warren Rice and J. W. Baker, trustees, sold the Frederick county property at public auction. It was bid in by Clowser at $3,000. By a decree entered on December 30, 1933, the sale was confirmed and the property was directed to be conveyed to Clowser upon the payment of the purchase price. The trustees were directed to pay the cost of the sale out of the cash payment and to retain the balance "to be administered in this suit."

The purchase price seems to have been collected shortly after the confirmation of the sale, was retained by Rice, trustee, and was not reported to the court until 1937. It developed, however, that "some time within three or four months after the sale," Rice, trustee, offered to give to Beasley his (Rice's) individual check for the net proceeds of the sale. Beasley declined to accept the check until the distribution to the Bank had been ordered by a proper decree of court. This position was entirely proper. The money was not the property of Rice and the latter had no right to pay it to the Bank or to its counsel until he had been authorized to do so by the court. Therefore, Rice's offer did not constitute a valid tender so as to affect the running of interest on the Bank's claim.

We do not mean to say, however, that the Bank is entitled to recover such interest. As to the deficiency due on its deed of trust indebtedness it is merely a general creditor. The record does not disclose whether the assets for the benefit of the general creditors will or will not justify the payment of interest in whole or in part. All we decide with respect to this phase of the case is that the Bank's right to interest has not been affected by the purported tender.

The decree appealed from will be modified to accord with the views herein expressed, and except as so modified will be affirmed with costs to the appellees.

*Modified and affirmed.*